FILED

2013 MAY -2  P 2: 34

CLERK US DISTRICT COURT
ALEXANDRIA, VIRGINIA

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

SQUARE, INC.,

    Plaintiff,

v.

<suareup.com>, et al.,[1]

    Defendant.

Civil Action No. 1:13cv549

AJT/JFA

**JURY TRIAL DEMAND**

## VERIFIED COMPLAINT FOR IN REM RELIEF

Plaintiff Square, Inc. ("Square" or "Plaintiff") brings this verified complaint against Defendant, the various domain names as alleged below in Paragraph 1 of this Complaint, and alleges as follows:

### NATURE OF THE ACTION

1. This is an *in rem* action under the Anticybersquatting Consumer Protection Act ("ACPA"), 15 U.S.C. § 1125(d), for injunctive and other relief relating to the bad-faith registration and use of the following fifty-four domain names, <suareup.com>, <squreup.com>, <wwwsquareup.com>, <qsuareup.com>, <squarepu.com>, <squaruep.com>, <sqiareup.com>, <quareup.com>, <squaerup.com>, <swuareup.com>, <squateup.com>, <squareip.com>, <squarreup.com>, <squuareup.com>, <sqyareup.com>, <squaeeup.com>, <sqquareup.com>,

---

[1] The full list of domain names include: <suareup.com>, <squreup.com>, <wwwsquareup.com>, <qsuareup.com>, <squarepu.com>, <squaruep.com>, <sqiareup.com>, <quareup.com>, <squaerup.com>, <swuareup.com>, <squateup.com>, <squareip.com>, <squarreup.com>, <squuareup.com>, <sqyareup.com>, <squaeeup.com>, <sqquareup.com>, <squareuup.com>, <ssquareup.com>, <squsreup.com>, <squareyp.com>, <aquareup.com>, <squareupp.com>, <squaareup.com>, <squarwup.com>, <squarrup.com>, <squareeup.com>, <xquareup.com>, <zquareup.com>, <equareup.com>, <sqjareup.com>, <sqhareup.com>, <squarejp.com>, <squarehp.com>, <squareul.com>, <sqjuareup.com>, <squjareup.com>, <squhareup.com>, <sqhuareup.com>, <squzareup.com>, <squazreup.com>, <squaqreup.com>, <squqareup.com>, <squafreup.com>, <squarfeup.com>, <squardeup.com>, <squarseup.com>, <squareujp.com>, <squareuhp.com>, <squareulp.com>, <squareupl.com>, <sxquareup.com>, <xsquareup.com>, and <squarejup.com> (collectively, the "Domain Names").

1

<squareuup.com>, <ssquareup.com>, <squsreup.com>, <squareyp.com>, <aquareup.com>, <squareupp.com>, <squaareup.com>, <squarwup.com>, <squarrup.com>, <squareeup.com>, <xquareup.com>, <zquareup.com>, <equareup.com>, <sqjareup.com>, <sqhareup.com>, <squarejp.com>, <squarehp.com>, <squareul.com>, <sqjuareup.com>, <squjareup.com>, <squhareup.com>, <sqhuareup.com>, <squzareup.com>, <squazreup.com>, <squaqreup.com>, <squqareup.com>, <squafreup.com>, <squarfeup.com>, <squardeup.com>, <squarseup.com>, <squareujp.com>, <squareuhp.com>, <squareulp.com>, <squareupl.com>, <sxquareup.com>, <xsquareup.com>, and <squarejup.com> (collectively the "Domain Names"), which infringe upon Square's distinctive, famous, and federally registered trademark and trade name for SQUARE and domain name at <squareup.com>. Square has already prevailed in a UDRP proceeding involving these exact Domain Names but must now bring this action to complete the transfer of the Domain Names due to an unjustified appeal filed by Jin Qian ("Qian" or "Registrant") in China.

## THE PARTIES

2. Plaintiff is a Delaware corporation having its principal place of business at 901 Mission Street, San Francisco, California 94103.

3. On information and belief, the domain name registrar for the Domain Names is Nanjing Imperiosus Technology Co. Ltd. ("NIT" or "Registrar"), with its principal place of business at Wu Xing Nian Hua Da Sha, Office 1004, 139 Hanzhong Road, Nanjing 210004, China.

4. On information and belief, the registrant of the Domain Names is Jin Qian, located at Guojiashan 29-82-4, Nanjing, Jiangsu, China. The registrant's WHOIS record lists various incomplete addresses, all based in China.

## JURISDICTION AND VENUE

5. This action arises, *inter alia*, under Section 2201 of the Judicial Code, 28 U.S.C. § 2201 and Sections 32 and 43 of the Lanham Act, 15 U.S.C. §§ 1114 and 1125.

6. This Court has subject matter jurisdiction over this action pursuant to Section

39(a) of the Lanham Act, 15 U.S.C. § 1121(a), and Sections 1131 (federal question jurisdiction), 1338(a) (trademark infringement), and 1338(b) (unfair competition) of the Judicial Code, 28 U.S.C. § 1331, 1338(a) and (b).

7. Venue is proper in this District pursuant to 28 U S.C. § 1391(b)(2) and 15 U.S.C. § 1125(d)(2)(C) because the cause of action arises in this District and the *res* "i.e. the Domain Names that are the subject of this action" are maintained by a registry, VeriSign, Inc., within the boundaries of this District, and which has its *situs* within this District.

8. This Court has *in rem* jurisdiction over the Domain Names pursuant to 15 U.S.C. § 1125(d)(2) because Square is informed and believes, and therefore alleges, that this Court lacks *in personam* jurisdiction over the Registrant of the Domain Names, which would have been the defendant in a civil action pursuant to 15 U.S.C. § 1125(d)(1). On information and belief, Registrant is an individual who resides in the country of China and does not have the requisite contacts for this Court to establish *in personam* jurisdiction over Registrant.

9. The Domain Names, registered to Registrant, violate Square's rights in its SQUARE trademark and trade name, which is protected under 15 U S.C. §§ 1125(a).

## BACKGROUND

### Square's Trademark Rights

10. Since at least as early as July 2009, and continuously since then, the SQUARE trademark and trade name have been used in interstate commerce in connection with a variety of goods and services, including hardware and software for credit card, debit card, and prepaid card payments, as well as payment processing services (hereinafter, Square's trademarks will be referred to as "the Square Marks," and Square's goods and services will be referred to as "the Square Goods and Services.").

11. Since Square's launch in 2009, it has become the industry leader in the area of mobile payment solutions for Apple and Android cell phones and tablet devices. Square's hardware, software, and payment processing services enable individuals and businesses to accept and make credit card, debit card, and prepaid card payments via an elegant and easy-to-use card

reader and mobile applications compatible with iPhone, iPad, and Android phones. As of the filing date of this Complaint, Square has enabled over 3 million individuals and businesses to accept payment cards via its services, and Square is processing over $12 billion in annualized payments. The Square Marks and Square Goods and Services are extensively used and easily recognized throughout the United States. On October 24, 2012, Square launched its products and services in Canada and plans to launch in other international jurisdictions soon.

12. Square has received considerable publicity from third-party sources, who have written numerous print and web-based articles specifically about Square, the Square Marks, and the Square Goods and Services. In the last six months alone, Square was featured in *The Los Angeles Times, Fast Company, The New York Times, The Washington Post, Cnet.com, CNBC, 60 Minutes, Wired Magazine, The Wall Street Journal*, and *Slate*, to name a few, and listed as one of *Fast Company's* top-five most innovative companies. In fact, the author of the *Slate* article, entitled "Silicon Valley's Next Great Company," stated: "I believe the tech industry's next great company is Square." Additionally, *60 Minutes* featured Square as "one of the hottest companies in the mobile payments space". Copies of these articles are hereto at **Exhibit A**. Such publicity serves to further establish the fame, customer recognition, and goodwill in the Square Marks nationwide.

13. Square's products are sold at some of the largest and most recognizable retail shopping chains in the United States, including AT&T, Apple stores, Best Buy, FedEx, Staples, Target, Verizon, Walgreens and Wal-Mart. The Square Marks were even featured as part of Best Buy's Innovations 2012 Super Bowl commercial, among other such famous innovations as Shazam, SMS messaging, the camera phone, and text-to-speech capabilities. A copy of an article discussing the Best Buy commercial honoring Square is attached hereto as **Exhibit B**. It has been well-publicized that Square recently partnered with Starbucks Coffee Company, the largest coffeehouse company in the world, to begin processing all credit and debit card transactions and selling Square credit card readers at Starbucks' more than 7,000 company-operated stores in the United States. A copy of a *New York Times* article discussing the Square

and Starbucks partnership is attached hereto as **Exhibit C**.

14. The Square Goods and Services have been advertised, promoted, marketed, offered and/or rendered in connection with the Square Marks since at least as early as July 2009 and continuously since then. Square has spent considerable time, money, and effort promoting the Square Marks on the Internet and via other media, as well as developing customer recognition and goodwill in the Square Marks nationwide via printed, web-based, mass media, and television advertisements, publications, and commercials. Images, videos, and promotions featured on Square's website at <squareup.com> are representative. A few screenshots of Square's website are attached hereto as **Exhibit D**. The Square Goods and Services have become so respected and widespread that both President Obama's and Governor Romney's 2012 political campaigns accepted contributions using the same famous card reader: the SQUARE device offered by Square.

15. Square owns and operates the domain name <squareup.com> and promotes the Square Marks alongside the recognizable <squareup.com> domain name. This example is illustrative:



Copies of representative Square advertisements are attached hereto as **Exhibit E**. Square's print,

5

web, billboard, and television advertisements instruct consumers to visit Square's website at <squareup.com>. Since Square's founding, <squareup.com> has been (and continues to be) Square's primary Internet presence and point of contact with consumers. According to Square's records, the <squareup.com> domain accounts for approximately eighty percent of the total traffic to Square's website, while <square.com>, a domain name Square licenses and operates, accounts for approximately twenty percent of the traffic. Currently, <square.com> redirects users to <squareup.com>, further reinforcing consumer's association between Square and SQUARE UP.

16. Furthermore, the <squareup.com> domain is an integral part of Square's payment services – there are several functions available to Square customers only via <squareup.com>. For examples, merchants need to access <squareup.com> to manage their items for sale, publish their business listings at squareup.com/directory, set sales tax rates, view their sales activity, issue refunds, reset their passwords, edit their user profiles or bank information, obtain technical support, and otherwise administer their accounts. Customers also use <squareup.com> to obtain Square's card readers, and the physical packaging for Square's card readers features the URL for Square's website at <squareup.com>. Because the Square Goods and Services are so closely associated with <squareup.com>, consumers identify the phrase SQUARE UP as indicating the source of the Square Goods and Services.

17. In fact, unsolicited media coverage and financial analysis groups regularly refer to Square as SQUARE UP, sometimes intentionally because the consumer market place identifies SQUARE and SQUARE UP as one in the same. In one recent, unsolicited article by *Merchant Account Reviews*, the author referred to "Square Up (or Square, as you wish)" when discussing Square. *See* **Exhibit F**.

18. Square's rights in the Square Marks and variations thereof, including for the SQUARE UP mark, are further evidenced by its ownership of the following United States Patent and Trademark Office ("USPTO") trademark registrations and applications:

| Mark<br>Ser. No.<br>Reg. No. | Goods/Services | First Use Date | Filing Date |
|---|---|---|---|
| SQUARE<br><br>Ser. No. 77/798,169<br><br>Reg. No. 3,917,735<br>(Registered 2/8/2011) | Cl. 9 / Hardware and software for processing credit card, debit card, and gift card transactions via mobile devices | July 2009 | 08/05/2009 |
| SQUARE<br><br>Ser. No. 77/798,170<br><br>Reg. No. 3,962,489<br>(Registered 5/17/2011) | Cl. 35 / Reconciling credit card, debit card, and gift card accounts transactions via a global computer network<br><br>Cl. 36 / Reconciling, namely, processing credit card, debit card, and gift card transactions via a global computer network<br><br>Cl. 38 / Providing electronic transmission of credit card, debit card, and gift card transaction data, namely, charges | July 2009 | 08/05/2009 |
| ▣ Square<br><br>85/542,833 | Cl. 9 / Hardware and software for making and processing payment transactions with credit cards, debit cards, gift cards, cash, and other payment forms; financial software and accessories for mobile devices, cash registers, and other point of sale systems; analytic tools relating to payment processing and tracking; customer relations and loyalty program tools for businesses<br><br>Cl. 35 / Business management and analytic tools relating to payment processing and tracking; customer relations and loyalty program tools for businesses; services for reconciling payment transactions based on credit cards, debit cards, gift cards, and other forms of payment<br><br>Cl. 36 / Services for making and processing payment transactions with credit cards, debit cards, gift cards, cash, and other payment forms; business management and analytic tools relating to payment processing, customer relations and loyalty programs, and business optimization<br><br>Cl. 38 / Providing electronic transmission of payment transactions and related information, merchant-customer communications, and advertising and promotional materials; providing electronic transmission of financial and business | Based on Section 1(b) Intent-to-Use | 2/14/2012 |

| | | | |
|---|---|---|---|
| | information between and among customers and businesses | | |
| **SQUARE UP** 77/914,191 | Cl. 9 / Hardware and software for processing credit card, debit card, and gift card transactions via mobile devices | Based on Section 1(b) Intent-to-Use | 01/18/2010 |
| **SQUARE UP** 77/914,193 | Cl. 36 / Electronic payment services, namely, reconciling financial transaction accounts for others via a global computer network | Based on Section 1(b) Intent-to-Use | 01/18/2010 |
| **SQUARE UP** 77/914,194 | Cl. 38 / Providing electronic transmission of credit card, debit card, and gift card transaction data, namely, charges and payments | Based on Section 1(b) Intent-to-Use | 01/18/2010 |

True and correct copies of the Certificates of Registration for the registrations, Registration Nos. 3,917,735 and 3,962,489, along with TARR printouts for each registration are attached hereto as **Exhibits G and H**, respectively. As demonstrated by the TARR printouts, these registrations are in full force and effect. TARR printouts for each application, Serial Nos. 85/542,833, 77/914,191, 77/914,193, and 77/914,194 are attached hereto as **Exhibits I, J, K, and L** respectively.

19. Square's registered Square Marks serve as prima facie evidence of: (a) the validity of the registered marks; (b) the registration of the mark; (c) Square's ownership of the registered marks; and (c) Square's exclusive right to use the marks in commerce in connection with the goods or services specified in the registration pursuant to 15 U.S.C. § 1115(a).

20. Since at least as early as July 2009, and continuously since then, Square's use of the Square Marks in interstate commerce has been well known and extensive in connection with Square's Goods and Services, including hardware and software for processing financial transactions via mobile devices, as well as electronic payment services. *See* chart in Paragraph 18, above. Moreover, Square has a bona fide intent to use the SQUARE & Design and SQUARE UP Marks in connection with a variety of goods and services, as indicated by the trademark applications referenced in the chart above at Paragraph 18.

21. Square's rights in the Square Marks and variations thereof, including for SQUARE Logo, are further evidenced by its ownership of the following China Trademark Office

trademark applications:

| Mark<br>Ser. No.<br>Reg. No. | Goods/Services | First Use Date | Filing Date |
|---|---|---|---|
| SQUARE<br><br>8,231,081 | Cl. 9 / | | 4/22/2010 |
| SQUARE<br><br>8.231.080 | Cl. 35 / | | 4/22/2010 |
| SQUARE<br><br>8,628,217 | Cl. 36 / | | 9/1/2010 |
| SQUARE<br><br>8,231,079 | Cl. 38 / | | 4/22/2010 |
| SQUARE Logo<br><br>10,651,950 | Cl. 9 / | | 3/21/2012 |
| SQUARE Logo<br><br>10,651,948 | Cl. 35 / | | 3/21/2012 |
| SQUARE Logo<br><br>10,651,952 | Cl. 36 / | | 3/21/2012 |
| SQUARE Logo<br><br>10,651,946 | Cl. 38 / | | 3/21/2012 |

22. The Square Marks are famous, distinctive, and widely recognized as the source of leading financial payment solutions for mobile devices. After continuous use for over three years in connection with Square's highly publicized, successful business, the Square Marks have come to be immediately identified as the source of Square's Goods and Services. As a result of Square's efforts, the Square Marks have attained widespread public recognition and renown, and become identified in the minds of consumers exclusively with Square's Goods and Services. Undoubtedly, the Square Marks have become an asset of substantial value and a symbol of Square's goodwill.

23. Additionally, the Square Marks became very well known prior to Registrant's

registration of the Domain Names beginning in October 2009.

### Registrant's Bad Faith Registration and Use of the Infringing Domain Names and Infringement of Square's SQUARE Mark

24. On information and belief, with knowledge of the Square Marks, Registrant selected, acquired, registered, and is using the Domain Names to generate advertising and click-through revenue.

25. On information and belief, on or around October 18, 2009, Registrant began acquiring, registering, and using domain names that blatantly typosquat on Square's website and infringe Square's trademark rights, as noted below. As of January 2012, Registrant had acquired, registered, and began using at least eighty domain names that infringe upon Square's trademark rights, trade name, and domain name at <squareup.com>. Fifty-four of these domain names include the Domain Names that are the subject of this suit.

| The 54 Domain Names that Are the Subject of this Suit ||||
|---|---|---|---|
| suareup.com | sqyareup.com | zquareup.com | squaqreup.com |
| squreup.com | squaeeup.com | equareup.com | squqareup.com |
| wwwsquareup.com | sqquareup.com | sqjareup.com | squafreup.com |
| qsuareup.com | squareuup.com | sqhareup.com | squarfeup.com |
| squarepu.com | ssquareup.com | squarejp.com | squardeup.com |
| squaruep.com | squsreup.com | squarehp.com | squarseup.com |
| sqiareup.com | squareyp.com | squareul.com | squareujp.com |
| quareup.com | aquareup.com | sqjuareup.com | squareuhp.com |
| squaerup.com | squareupp.com | squjareup.com | squareulp.com |
| swuareup.com | squaareup.com | squhareup.com | squareupl.com |
| squateup.com | squarwup.com | sqhuareup.com | sxquareup.com |
| squareip.com | squarrup.com | squzareup.com | xsquareup.com |
| squarreup.com | squareeup.com | squazreup.com | squarejup.com |
| squuareup.com | xquareup.com | | |
| Additional Domain Names that Are Not a Part of this Suit ||||
| sqwareup.com | squyareup.com | sqwuareup.com | sqyuareup.com |
| squareup.co | squareuop.com | squatreup.com | sqiuareup.com |
| squraeup.com | squaereup.com | swquareup.com | squarweup.com |
| suqareup.com | squasreup.com | squareupo.com | squareuyp.com |
| squiareup.com | squareuip.com | dsquareup.com | sauareup.com |
| sdquareup.com | squareyup.com | asquareup.com | wquareup.com |
| saquareup.com | squareap.com | | |

26. Registrant registered the Domain Names without the consent or agreement of Square.

27. All of the Domain Names route to "parked" websites, which are generic websites

that contain revenue-generating links and advertisements for other websites that, on information and belief, when clicked, put money in the Registrant's pocket. On information and belief, the "parked" websites demonstrate no bona fide offering of goods or services, other than advertisements for purposes of generating "click through" revenue to third party companies. Indeed, it appears that the whole purpose of Registrant's "business" model is to profit from misleading consumers who are trying to reach Square's actual website and are directed to misleading advertisements instead. Registrant's "parked" websites demonstrate that he is engaged in typosquatting, which in turn demonstrates that he has acted in bad faith in registering and using the Domain Names. Attached hereto as **Exhibit M** is a printout from the websites located at the Domain Names.

28. On information and belief, Registrant's selection, acquisition, registration, and use of its Domain Names is part of a campaign to intentionally and willfully deceive the public and to profit from Square's valuable goodwill in the Square Marks, as Registrant has done with other famous marks, as described below in paragraph 47.

29. On information and belief, Registrant acted in bad faith in selecting, acquiring, registering, and using the Domain Names, with full knowledge of Square's prior use of the SQUARE trademark and trade name, and with bad faith intent to profit from the substantial goodwill associated with Square's SQUARE trademark and trade name.

**Registrant's knowledge of Square and the famous SQUARE Marks is evidence of bad faith**

30. On information and belief, Registrant was aware of Square prior to its adoption of the Domain Names.

31. On information and belief, Registrant was aware of the Square Marks prior to its adoption of the Domain Names.

32. Registrant also had constructive knowledge of the Square Marks as early as August 5, 2009 due to Square's federal applications for such marks with the USPTO.

33. In addition to Registrant's constructive knowledge as of August 5, 2009, on information and belief, Registrant was aware of Square and the Square Marks prior to its

selection, acquisition, registration, and use of the Domain Names because of the significant publicity surrounding Square in connection with and prior to the commercial launch of the Square Goods and Services in July 2009. Indeed, this is the very reason Registrant created the Domain Names.

34. Registrant also had actual knowledge of Square and the Square Marks based upon the written communications issued to Registrant in an attempt to settle this dispute amicably, as discussed in detail below in Paragraph 36. Instead of responding to the communications, Registrant made a bold and ultimately unsuccessful decision to file trademark applications with the USPTO for the trademarks SQUAREUP and SQUREUP, filed October 20, 2011 and October 31, 2011, as discussed further below.

35. Registrant's constructive and actual knowledge of Square and the Square Marks is evidence of Registrant's bad faith selection, acquisition, registration, and use of the Domain Names.

**Registrant's applications to register infringing marks with the USPTO evidences bad faith**

36. On September 7, 2011, Square sent Registrant a cease and desist letter regarding Registrant's use of domains typosquatting on Square's rights. Rather than responding to Square's letter, Registrant filed trademark applications with the USPTO for the trademarks SQUAREUP, Ser. No. 85/452,646, filed October 20, 2011, and SQUREUP, Ser. No. 85/459,947, filed October 31, 2011, (the "Applied-for SQUAREUP Mark" and the "Applied-for SQUREUP Mark," or collectively the "Applied-for Marks") thereby further demonstrating Registrant's clear bad faith.

37. The Applied-for Marks were <u>identical</u> to Square's SQUARE UP Marks and <u>near-identical</u> to Square's SQUARE and SQUARE & Design Marks in appearance, sound, and commercial impression when used in connection with Registrant's Services. The dominant portions of the respective parties' marks were identical, as the Applied-for Marks wholly and prominently incorporated Square's widely recognized, famous, and distinctive SQUARE element, which is common to all of the Square Marks. Registrant's inclusion of the secondary

word "UP" made the Applied-for SQUAREUP Mark identical to Square's SQUARE UP Marks and did little to distinguish the Applied-for SQUAREUP Mark from Square's widely recognized and famous SQUARE Marks. There can be no doubt that the marks look alike and convey the same commercial impression. Second, the Applied-for SQUREUP Mark was a clear attempt at typosquatting upon the Square Marks. Registrant's Applied-for SQUREUP Mark was a mere misspelling of Square's SQUARE UP Mark, with its omission of the letter "a" from the word "square," a common typo when attempting to reach <squareup.com>, clearly attempting to conjure the commercial impression of Square's SQUARE UP Mark and the widely recognized, famous and distinctive Square Marks.

38. Registrant's bad faith in adopting the Applied-for Marks that were identical and/or near-identical to the Square Marks was further evidenced by Registrant's attempt to register the Applied-for Marks for services related to and in the same International Class as Square's Goods and Services. Registrant's purported business model focused on advertising and marketing on the Internet and other forms of new media, in Class 35. Square's Class 35 services, namely financial and credit card processing services, are heavily advertised on the Internet and other forms of new media. It was likely that Registrant's targeted consumer base would overlap with Square's targeted consumer base. Moreover, because Registrant only offers typosquatting sites that seek to mislead users who are trying to locate Square's site and direct their web traffic to the advertisements and sites of Square's competitors, and to otherwise trade off the goodwill in the famous Square Marks, "advertising and marketing services" in Class 35 were the only services that such a typosquatting website could possibly support.

39. Furthermore, Registrant not only failed to respond to the cease and desist letter from Square, but he also transferred three of the disputed domain names he had registered at that time (<squareup.com>, <squraeup.com>, and <suqareup.com>) to Protected Domain Services, in order to shield his identity, and registered all subsequent domains through the Protected Domain Services privacy shield and/or the WhoisGuard Service.com privacy shield. As if filing identical trademarks only weeks after receiving a demand letter were not enough to indicate Registrant's

bad faith, Registrant's efforts to conceal his true identity with his domain name ownership further indicates his bad faith.

**Square prevailed in an Opposition proceeding against Registrant's trademark applications**

40. On June 1, 2012, Square filed an Opposition against Registrant's Applied-for SQUAREUP and SQUREUP Marks, Opposition No. 91,205,401.

41. On August 1, 2012, a Notice of Default issued due to Registrant's failure to respond to the Opposition in a timely fashion.

42. On September 17, 2012, the Trademark Trial and Appeal Board ("TTAB") sustained Square's Opposition based on Registrant's failure to respond to the Opposition, and on that same date the Applied-for SQUAREUP and SQUREUP Marks were abandoned. Attached hereto as **Exhibit N** is a copy of the TTAB's Order.

**Square prevailed in two UDRP actions involving Registrant's 80+ infringing domain names**

43. On March 27, 2012, Square filed a Uniform Dispute Resolution Policy ("UDRP") Complaint against Registrant, Protected Domain Services, and WhoisGuardService.com with respect to Registrant's infringing registration and use of the eighty above-reference domain names.

44. On May 11, 2012, a Panel of the National Arbitration Forum granted Square's requested relief in the UDRP action pending against Registrant, Claim No. FA1203001436661. Attached hereto as **Exhibit O** is a copy of the UDRP decision. The Panel found that Square had established its rights in the SQUARE mark, continuously used and acquired secondary meaning in the SQUARE UP Mark, as well as established rights in the <squareup.com> domain via its use as a domain name. The Panel further found that Registrant's disputed domain names were confusingly similar to Square's SQUARE mark, SQUAREUP mark, and <squareup.com> domain. The Panel ruled that Registrant is not commonly known by the disputed domain names, is not making a bona fide offering of goods or services or a legitimate noncommercial or fair use of the disputed domains name, and that Registrant was profiting from Square's famous brand. Finally, the Panel determined that Registrant registered and used the disputed domain names in

bad faith and engaged in typosquatting. Given the fact that a very similar standard applies in the instant action, the UDRP Panel's finding that Registrant had bad faith intent with respect to the disputed Square domains is persuasive with respect to Registrant's bad faith intent in this action.

45. On May 15, 2012, a Panel of the National Arbitration Forum also granted Square's requested relief in the UDRP action against Registrant and WhoisGuardService.com, Claim No. FA1203001436637. The fifty-four Domain Names in this present action are the same fifty-four (54) domain names that were the subject of this UDRP action. Attached hereto as **Exhibit P** is a copy of the UDRP decision. Again, another Panel has already found that the disputed domain names were confusingly similar to Square's trademarks, and, most poignantly, that Registrant had a "mala fide intent" in his registration and use of the disputed domain names. As a result, the UDRP Panel also ordered the transfer of the disputed domain names to Square. The UDRP Panel's findings in that dispute further evidence Registrant's bad faith intent.

### Registrant's attempt to block the determination of the UDRP Panel

46. Despite Square's clear victory in several other venues, including an Opposition at the TTAB and two UDRP proceedings, on May 23, 2012, Registrant filed a complaint in China with the Nanjing Intermediate People's Court ("Chinese Civil Complaint") to enjoin enforcement of the UDRP Panel's decision with respect to Claim No. FA1203001436637. On April 26, 2013, Square received what appears to be an improperly served copy of the Chinese Civil Complaint stating that a hearing was scheduled in the Nanjing Court for April 25, 2013, the day prior to Registrant's purported service on Square. The Chinese Civil Complaint and Registrant's apparently delayed and flawed attempt at service are clearly prejudicial to Square and its enforcement of the UDRP Panel's decision.

### Registrant's pattern and practice of infringing famous trademarks

47. On information and belief, Registrant has established a pattern and practice of infringing famous trademarks. Within the last year, not only has Registrant filed trademark applications nearly identical to the famous Square Marks, but, on information and belief, Registrant has filed for applications nearly identical to other famous marks. By way of example

and on information and belief, Registrant has filed an application for PINTERESTS, at Serial Number 85/558,578, which covers almost exactly the same services as filed in the Applications at issue in Square's Opposition proceeding and is nearly identical to the widely popular and famous PINTEREST brand. Similarly, on information and belief, Registrant has filed for FBCLOUD, at Serial Number 85/390,119, which evokes the famous FACEBOOK mark and the generic term CLOUD. *See* **Exhibit Q**.

**Registrant's actions are likely to cause confusion and dilution**

48. Registrant's selection, acquisition, registration, and use of the Domain Names is likely to cause confusion, mistake, or deception as to the affiliation, connection, or association of Registrant with Square, or as to the origin, sponsorship, or approval of Registrant's Domain Names by Square, thereby causing loss, damage and injury to Square. The extent of potential confusion among consumers between Registrant's Domain Names and the Square Marks is substantial. Indeed, the apparent motivation for Registrant's use of the Domain Names is to trade and profit on that confusion.

49. Consumers familiar with the Square Marks are likely to believe mistakenly that Registrant's Domain Names are sponsored, authorized, associated with or otherwise approved by Square because the Domain Names are confusingly similar to the Square Marks. Actual and potential customers are likely to errantly arrive at Registrant's websites due to typos when attempting to enter Square's domain name into their browsers. The result of this blatant typosquatting is that inferior quality, deficiencies or other faults in Registrant's websites are likely to reflect negatively upon, tarnish, and seriously injure the reputation which Square has established for the Square Goods and Services. This is likely to result in the loss of revenues to Square and damage to Square's reputation.

50. Registrant's use of the Domain Names does, and is likely to, falsely suggest a relationship between Registrant's Domain Names and Square's Goods and Services. Such use is thus likely to cause a significant increase in the level of Registrant's web traffic due to consumers' mistaken belief that Square is the source or sponsor of Registrant's Domain Names.

Registrant's use of the Domain Names is therefore likely to result in Registrant's trading off and benefiting from the goodwill associated with Square, resulting in ill-gotten gains by Registrant.

51. In the unlikely event that any consumer might not be confused into believing that Registrant's Domain Names originate from or are related to those of Square, Registrant's registration and use of the Domain Names would nonetheless diminish the distinctive quality of the famous Square Marks, thereby causing dilution of Square's famous Marks in violation of Lanham Act Section 43(c)(1), 15 U.S.C. § 1125(c)(1), and in violation of Square's rights under state dilution and unfair competition law. As a result, the ability of the Square Marks to identify Square's Goods and Services is weakened, thereby causing loss, damage, and injury to Square.

## FIRST CLAIM FOR RELIEF:

### Federal Trademark Cyberpiracy Violation of 15 U.S.C. § 1125(d)

52. Square incorporates herein by reference each and every allegation in the preceding paragraphs of this Complaint.

53. Square is the owner of the distinctive, famous, and federally registered Square Marks.

54. The Square Marks are distinctive of the Square Goods and Services for which they continuously have been used and registered, and was distinctive since at least as early as when the Domain Names were registered.

55. Registrant has no rights in the trademark SQUARE or the Domain Names.

56. Registrant's Domain Names are confusingly similar to the Square Marks.

57. Registrant has registered, trafficked in, used, and/or is using the Domain Names with the bad faith intent to profit from the Square Marks.

58. Registrant's actions constitute a violation of Lanham Act § 43(d), 15 U.S.C. § 1125(d).

59. Square has been, is now, and will be irreparably harmed by Registrant's aforementioned acts, and, unless enjoined by the Court, Registrant's unauthorized use of the Domain Names will continue, and there is no adequate remedy at law for the harm caused by the

acts alleged herein.

60. Square has exercised due diligence but has been unable to find a person who would have been a defendant in a civil action brought under 15 U.S.C. § 1125.

61. Since Square owns the exclusive right to the Square Marks, and Registrant has no rights to them whatsoever, it is appropriate for this Court to declare Square the rightful owner of the Domain Names and order the prompt transfer of the Domain Names to Square.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that the Court:

(i) declare, adjudge, and decree that Square is the sole legal and equitable owner of the Domain Names;

(ii) direct that the Domain Names be transferred and registered to Square;

(iii) award statutory damages to Square as a result of Registrant's bad faith, pursuant to 15 U.S.C. §§ 1125(d)(2)(D)(ii) and 1117(d), in the amount of $5,400,000 ($100,000 per domain name);

(iv) award Square costs and attorneys' fees, pursuant to 15 U.S.C. § 1117(a); and

(v) award such other and further relief that this Court may deem just and equitable.

## VERIFICATION

I, Dana R. Wagner, declare as follows:

I am the General Counsel and Secretary of Square, Inc. ("Square"). I am over the age of twenty-one, have never been convicted of a crime involving moral turpitude, and am otherwise fully competent to make this Verification. I have read the foregoing Plaintiff's Verified Complaint for *In Rem* Relief, and the statements contained therein are true and correct and are within my personal knowledge or based upon information supplied to me by officers of, or persons employed or retained by, Square, who are knowledgeable of such contents.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed on this 2nd day of May 2013.

By: _____
Dana R. Wagner

Respectfully submitted,

FISH & RICHARDSON, P.C.

Dated:

By: _____
Anne M. Sterba (43235)
Fish & Richardson P.C.
1425 K Street, NW
11th Floor
Washington, DC 20005
Tel.: (202) 783-5070
Fax: (202) 783-2331
asterba@fr.com

**OF COUNSEL**
Lisa Greenwald-Swire (Cal. Bar No. 213269)
Fish & Richardson P.C.
500 Arguello Street, Suite 500
Redwood City, CA 94063-1566
Telephone: 650-839-5070
Facsimile: 877-769-7945
greenwald-swire@fr.com

Attorneys for Plaintiff
SQUARE, INC.