**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**ALEXANDRIA DIVISION**

| | | |
|---|---|---|
| SQUARE, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 1:13cv0549 (AJT/JFA) |
| | ) | |
| SUAREUP.COM, | ) | |
| an Internet Domain Name, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## PROPOSED FINDINGS OF FACT AND RECOMMENDATIONS

This matter is before the court on plaintiff's motion for default judgment. (Docket no. 14). In this *in rem* action involving 54 domain name defendants, plaintiffs seek a default judgment (1) declaring that plaintiff Square, Inc. ("Square" or "plaintiff") is the sole legal and equitable owner of <suareup.com>, <squreup.com>, <wwwsquareup.com>, <qsuareup.com>, <squarepu.com>, <squaruep.com>, <sqiareup.com>, <quareup.com>, <squaerup.com>, <swuareup.com>, <squateup.com>, <squareip.com>, <squarreup.com>, <squuareup.com>, <sqyareup.com>, <squaeeup.com>, <sqquareup.com>, <squareuup.com>, <ssquareup.com>, <squsreup.com>, <squareyp.com>, <aquareup.com>, <squareupp.com>, <squaareup.com>, <squarwup.com>, <squarrup.com>, <squareeup.com>, <xquareup.com>, <zquareup.com>, <equareup.com>, <sqjareup.com>, <sqhareup.com>, <squarejp.com>, <squarehp.com>, <squareul.com>, <sqjuareup.com>, <squjareup.com>, <squhareup.com>, <sqhuareup.com>, <squzareup.com>, <squazreup.com>, <squaqreup.com>, <squqareup.com>, <squafreup.com>, <squarfeup.com>, <squardeup.com>, <squarseup.com>, <squareujp.com>, <squareuhp.com>, <squareulp.com>, <squareupl.com>, <sxquareup.com>, <xsquareup.com>, and <squarejup.com> (collectively "the defendant domain names"); (2) ordering the registry

VeriSign, Inc. ("VeriSign") to transfer the 54 defendant domain names from the current registrar, Nanjing Imperiosus Technology Co. Ltd. ("NIT"), to Melbourne IT Digital Brand Services ("Melbourne IT"); (3) ordering Melbourne IT to transfer the registrations of the 54 defendant domain names to plaintiff; and (4) assessing plaintiff's taxable costs of court, as calculated by the Clerk of the Court, against the 54 defendant domain names.[1] (Docket no. 14-1). Pursuant to 28 U.S.C. § 636(b)(1)(C), the undersigned magistrate judge is filing with the court his proposed findings of fact and recommendations, a copy of which will be provided to all interested parties.

## Procedural Background

On May 2, 2013, Square filed its verified complaint for *in rem* relief ("Compl.") against 54 defendant domain names pursuant to the *in rem* provisions of the Anticybersquatting Consumer Protection Act ("ACPA"), 15 U.S.C. § 1125(d). (Docket no. 1). The prayer for relief in the complaint sought: (1) a declaration that Square is the sole legal and equitable owner of the 54 defendant domain names; (2) an order directing that the 54 defendant domain names be transferred and registered to Square; (3) an award of statutory damages to Square as a result of the registrant's bad faith, pursuant to 15 U.S.C. §§ 1125(d)(2)(D)(ii) and 1117(d), in the amount of $5,400,000 ($100,000 per domain name); (4) an award of Square's attorney's fees and costs pursuant to 15 U.S.C. § 1117(a); and (5) an award of such other and further relief as the court may deem just and equitable. *Id.*

On September 7, 2011, Square sent Jin Qian, the registrant of the defendant domain names ("Jin Qian" or "the registrant"), a cease and desist letter regarding the registrant's infringement of Square's rights through the registrant's use of domain names allegedly "typosquatting on Square's rights." (Compl. ¶¶ 4, 36). Square alleges that rather than

---

[1] This is the relief set forth by plaintiff in the [Proposed] Order for Default Judgment attached to plaintiff's motion for default judgment. (Docket no. 14-1). As discussed below, plaintiff sought additional relief in the complaint, including statutory damages, that plaintiff has not pursued in this motion for default judgment.

responding to its letter, the registrant filed trademark applications with the United States Patent and Trade Office ("USPTO") for the trademarks SQUAREUP on October 20, 2011 (U.S. Trademark Application No. 85/452,646) and SQUREUP on October 31, 2011 (U.S. Trademark Application No. 85/459,947); transferred three of the disputed defendant domain names he had registered at that time (<squareup.co>[2], <squraeup.com>, and <suqareup.com>) to Protected Domain Services in order to shield his identity; and registered all subsequent domain names through the Protected Domain Services privacy shield and/or the <WhoisGuardService.com> privacy shield. (Compl. ¶¶ 36, 39). Subsequently, on May 2, 2013, counsel for Square sent notice of the alleged violation of the ACPA, notice that an *in rem* complaint had been filed under 15 U.S.C. § 1125(d), and a copy of the verified complaint to the registrant of the 54 defendant domain names at the e-mail and postal addresses provided by the registrant to the registrar.[3] (Docket no. 6-1, Ex. B). In addition, on May 2, 2013, Square's counsel sent notice of the alleged violation of the ACPA, notice that an *in rem* complaint had been filed under 15 U.S.C. § 1125(d), and a copy of the verified complaint to the postal and e-mail addresses for the registrar

---

[2] As confirmed by counsel during the hearing on July 12, 2013, the reference to <squareup.com> in paragraph 39 of the complaint was a typo and the correct domain name was <squareup.co>.

[3] Plaintiff's counsel sent notice to the registrant to the e-mail addresses provided by the registrant to the registrar, including: <qj118@163.com>, <lixiangyun515@yeah.net>, <qLL118@163.com>, <zbaoji@163.com>, <qsuareup.com@domainersidguard.com>, <squarepu.com@domainersidguard.com>, <euro1999@gmail.com>, <sqiareup.com@domainersidshield.com>, <meimei881021@126.com>, <cnlang.lang@163.com>, <swuareup.com@domainersidshield.com>, <nj@live.cn>, <squareip.com@domaiersidshield.com>, <ho@live.com>, <squuareup.com@noiddomains.com>, <188domain@gmail.com>, <dongdixiong@126.com>, <sqquareup.com@whoisdummy.com>, <squareuup.com@whoisdummy.com>, <goway188@yahoo.com>, <love858@126.com>, <squareyp.com@whoisdummy.com>, <wangde7788@163.com>, <fastclub@yahoo.cn>, <bjlove999@163.com>, <hao_3559@qq.com>, <chenloveu@foxmail.com>, <quopin123@yahoo.com>, <liut870618@yeah.net>, <zquareup@whoisdummy.com>, <fenxianglvyou@qq.com>, <bencool8@126.com>, <sqhareup.com@domainersid.com>, <bigfoodking@126.com>, <happyguide@foxmail.com>, <jinjia888@yahoo.com>, <yutian188@yeah.net>, <yesgou999@163.com>, <musicbillboard@qq.com>, <hahaya888@163.com>, <squzareup.com@dnwhoisguard.com>, <squarzreup.com@whoispimp.com>, <feibb968@yahoo.com>, <squqareup.com@whoispimp.com>, <domain551@163.com>, <squarfeup.com@whoispimp.com>, <youtai888@yahoo.com>, <zb1901013@163.com>, <pennychenlive@gmail.com>, <namike163@yahoo.com>, <ljj86888@126.com>, <loveu888@163.com>, <jinjing188@yahoo.com>, <bright_windows@hotmail.com>, and <youni188@yahoo.com>. (Docket no. 6-1, Ex. B). Plaintiff's counsel sent notice to the registrant to this postal address provided by the registrant to the registrar: Qian Jin, Guojiashan 29-82-4, Nanjing, Jiangsu 201137, China. *Id.*

3

of the 54 defendant domain names, NIT. (Docket no. 6-1, Ex. A). The registrant confirmed receipt of service by e-mail on May 2, 2013. (Docket no. 6 at 6; *see also* Docket no. 15-2, Ex. 3).

On May 6, 2013, Square filed a motion for an order to publish notice of action (Docket no. 5), along with a memorandum in support (Docket no. 6), seeking an order directing it to publish notice of this action once in *The Washington Times* in compliance with the ACPA. On May 9, 2013, an order was entered directing Square to provide notice of this action by publication in accordance with the ACPA. (Docket no. 7). The order providing notice of this action was published in *The Washington Times* on May 21, 2013 and on May 30, 2013, Square filed with the court an affidavit describing compliance with the order directing publication of notice of this action. (Docket no. 10). Other than the claims made by Square, no response, claim, or other pleading has been filed asserting any rights in any of the 54 defendant domain names and the 21-day time period provided in the published notice has expired.

On June 18, 2013, Square filed a request for entry of default as to all of the 54 defendant domain names (Docket no. 12) supported by a declaration executed by Anne M. Sterba stating that no answer or other responsive pleading was filed asserting any rights in any of the 54 defendant domain names (Docket no. 12-1) ("Sterba Decl. I" ¶¶ 7-10). The Clerk of Court entered default against all of the 54 defendant domain names on June 21, 2013. (Docket no. 13).

On June 28, 2013, Square filed plaintiff's motion for default judgment (Docket no. 14) along with a memorandum in support of the motion (Docket no. 15) and a declaration executed by Anne M. Sterba in support of the motion (Docket no. 15-1) ("Sterba Decl. II"). Following a notice of correction from the clerk's office to file a notice of hearing, on July 3, 2013, Square filed a notice of hearing for July 12, 2013 (Docket no. 17). On July 12, 2013, counsel for Square

4

appeared at the hearing on the motion for default judgment before the undersigned magistrate judge and no claimant appeared on behalf of the 54 defendant domain names.

## Factual Background

The following facts are established by the complaint[4] (Docket no. 1) and the memorandum and declaration in support of plaintiff's motion for default judgment (Docket no. 15).

Plaintiff Square is a Delaware corporation with its principal place of business in San Francisco, California. (Compl. ¶ 2). Square states that the domain name registrar for the 54 defendant domain names is NIT, which has its principal place of business at Wu Xing Nian Hua Da Sha, Office 1004, 139 Hanzhong Road, Nanjing 210004, China. (Compl. ¶ 3). Square also states that upon information and belief, the registrant of the 54 defendant domain names is Jin Qian, located at Guojiashan 29-82-4, Nanjing, Jiangsu, China, and that the registrant's WHOIS record lists various incomplete addresses, all based in China. (Compl. ¶ 4).

Since its launch in 2009, Square has become an industry leader in the area of mobile payment solutions for Apple and Android cell phones and tablet devices. (Compl. ¶ 11). Square's hardware, software, and payment processing services enable individuals and businesses to accept and make credit card, debit card, and prepaid card payments through an elegant and easy-to-use card reader and mobile applications that have compatibility with iPhone, iPad, and Android phones. *Id.* Square states that as of the date the complaint was filed, it has enabled over 3 million individuals and businesses to accept payment cards through its services and Square is processing more than $12 billion in annual payments. *Id.* Square has received extensive publicity from third-party sources, including numerous print and web-based articles specifically about Square in such publications as *The Los Angeles Times*, *Fast Company*, *The New York*

---

[4] Citations to the verified complaint are noted as "Compl. ¶ _".

*Times, The Washington Post, Cnet.com, CNBC, 60 Minutes, Wired Magazine,* and *Slate*.

(Compl. ¶ 12; *see also* Docket no. 1-2, Ex. A). Square asserts that this publicity further establishes the fame, customer recognition, and goodwill in its SQUARE trademark and trade names ("the Square marks") nationwide. (Compl. ¶¶ 10, 12). Square's products are also sold at large, recognizable retail shopping chains in the United States, including AT&T, Apple stores, Best Buy, FedEx, Staples, Target, Verizon, Walgreens, and Wal-Mart. (Compl. ¶ 13). Recently, it was well-publicized that Square partnered with Starbucks Coffee Company, the largest coffeehouse in the world, to begin processing all credit and debit card transactions and selling Square credit card readers at Starbucks' more than 7,000 company-operated stores throughout the United States. (Compl. ¶ 13; *see also* Docket no. 1-4, Ex. C).

Square owns federal registrations for the SQUARE trademark, including: (i) U.S. Trademark Registration no. 3,917,735 for the mark SQUARE, registered on February 8, 2011, for "hardware and software for processing credit card, debit card, and gift card transactions via mobile devices" in Class 9 (Docket no. 1-8, Ex. G); and (ii) U.S. Trademark Registration no. 3,962,489 for the mark SQUARE, registered on May 17, 2011, for "reconciling credit card, debit card, and gift card accounts transactions via a global computer network" in Class 35, "reconciling, namely, processing credit card, debit card, and gift card transactions via a global computer network" in Class 36, and "providing electronic transmission of credit card, debit card, and gift card transaction data, namely, charges" in Class 38 (Docket no. 1-9, Ex. H). (Compl. ¶ 18). These registrations are in full force and effect and serve as *prima facie* evidence of the validity of the registered marks, the registration of the marks, Square's ownership of the marks, and Square's exclusive right to use the marks in connection with the goods or services specified in the registration pursuant to 15 U.S.C. § 1115(a). (Compl. ¶¶ 18, 19).

6

Square also owns the following applications for U.S. trademarks: (i) U.S. Trademark Application no. 85/542,833 for the mark SQUARE, filed on February 14, 2012, in Classes 9, 35, 36, and 38 (Docket no. 1-10, Ex. I); (ii) U.S. Trademark Application no. 77/914,191 for the mark SQUARE UP, filed on January 18, 2010, in Class 9 (Docket no. 1-11, Ex. J); (iii) U.S. Trademark Application no. 77/914,193 for the mark SQUARE UP, filed on January 18, 2010, in Class 36 (Docket no. 1-12, Ex. K); and (iv) U.S. Trademark Application no. 77/914,194 for the mark SQUARE UP, filed on January 18, 2010, in Class 38 (Docket no. 1-13, Ex. L). (Compl. ¶ 18). Since at least as early as July 2009, and continuously since that time, Square's use of the Square marks in connection with the Square goods and services in interstate commerce has been well known and extensive. (Compl. ¶ 20). Square also has a *bona fide* intent to use the SQUARE UP marks in connection with a variety of goods and services, as indicated by the trademark applications it has filed. *Id.* In addition, Square owns several China Trademark Office trademark applications for the SQUARE mark and logo. (Compl. ¶ 21). The Square marks are distinctive, widely recognized as the source of leading financial payment solutions for mobile devices, and have come to be identified as the source of Square's goods and services following continuous use by Square for over three years in connection with Square's successful, publicized business. (Compl. ¶ 22).

Since at least July 2009, and continuously since then, the Square marks have been used in interstate commerce in connection with a variety of Square's goods and services, including hardware and software for credit card, debit card, and prepaid card payments, plus payment processing services ("the Square goods and services"). (Compl. ¶ 10). The Square goods and services and the Square marks are extensively used and easily recognized throughout the United States. (Compl. ¶ 11). Moreover, the Square goods and services have been advertised,

7

promoted, marketed, offered, and/or rendered in connection with the Square marks since as early as July 2009 and continuously since that time. (Compl. ¶ 14). Square has spent a considerable amount of time, money, and effort in promoting the Square marks on the Internet and in other media, as well as developing customer recognition and goodwill in the Square marks throughout the United States by means of printed, web-based, mass media, and television advertisements, publications, and commercials. *Id.* Square asserts that the Square goods and services have become so respected and widespread that the 2012 political campaigns of both President Obama and Governor Romney accepted political contributions using the SQUARE device offered by Square. *Id.*

Square also owns and operates the domain name <squareup.com> and Square promotes the Square marks in connection with this recognizable domain name insofar as Square's web, billboard, and television advertisements direct customers to visit Square's website at <squareup.com>. (Compl. ¶ 15; *see also* Docket no. 1-6, Ex. E). Since Square was founded, <squareup.com> has been and continues to be Square's primary Internet presence and point of contact with consumers. (Compl. ¶ 15). Further, Square's records indicate that the <squareup.com> domain accounts for approximately 80% of the total traffic to Square's website, while <square.com>, another domain name licensed and operated by Square, accounts for approximately 20% of the traffic. *Id.* Currently, <square.com> redirects users to <squareup.com>, reinforcing consumer's association between Square and the SQUARE UP mark. *Id.* According to Square, the <squareup.com> domain is also integral to Square's payment services because several functions offered by Square are only available to consumers at <squareup.com>. (Compl. ¶ 16). For example, merchants must access <squareup.com> to manage their items for sale, publish their business listings, set sales tax rates, view their sales

activity, issue refunds, reset their passwords, edit their user profiles or bank information, obtain technical support, and otherwise administer their accounts. *Id.* Consumers must access <squareup.com> to obtain Square's card readers and the physical packaging for Square's card readers features the URL for Square's website at <squareup.com>. *Id.* Square asserts that consumers identify the phrase SQUARE UP as indicating the source of Square's goods and services because the Square goods and services are so closely associated with <squareup.com>. *Id.* Moreover, Square states that unsolicited media coverage and financial analysis groups regularly refer to Square as SQUARE UP because the consumer market place has come to identify SQUARE and SQUARE UP as the same. (Compl. ¶ 17; *see also* Docket no. 1-7, Ex. F).

On or around October 18, 2009, the registrant Jin Qian began to acquire, register, and use domain names that blatantly "typo-squat"[5] on Square's website and infringed on Square's rights in the Square marks as a means of generating advertising and click-through revenue, despite the registrant's knowledge of the Square marks. (Compl. ¶¶ 4, 24, 25). As of January 2012, Jin Qian had acquired, registered, and begun using at least 80 domain names that infringed upon Square's trademark rights, trade name, and domain name at <squareup.com>, 54 of which are the subject of this suit. (Compl. ¶¶ 4, 25). The registrant registered the 54 defendant domain names without Square's consent or agreement. (Compl. ¶ 26). Each of the 54 defendant domain names resolves to a "parked" website, which is a generic website that contains revenue-generating links and advertisements for other websites that, when clicked, are believed by Square to send money to the registrant. (Compl. ¶ 27; *see also* Docket no. 1-14, Ex. M). As they only display advertisements for purposes of generating "click through" revenue to third party companies, the "parked" websites demonstrate no *bona fide* offering of goods or services.

---

[5] "A popular subgenera of cybersquatting—termed typosquatting—involves registering a domain name that is but a letter or two off from a distinctive mark." *Green v. Fornario*, 486 F.3d 100, 103 n.5 (3d Cir. 2007).

(Compl. ¶ 27). Square contends that the purpose of the registrant's "business" model is to profit from misleading consumers trying to reach Square's actual website by instead directing them to misleading advertisements, which demonstrates the registrant's bad faith in registering and using the defendant domain names. *Id.* Square asserts that the registrant's selection, acquisition, registration, and use of the defendant domain names is part of a campaign to intentionally and willfully deceive the public and to profit from Square's valuable goodwill in the Square marks. (Compl. ¶ 28).

Square states that the registrant Jin Qian was aware of Square and the Square marks prior to adopting the defendant domain names and had constructive knowledge of the Square marks as early as August 5, 2009 due to Square's federal applications for such marks with the USPTO. (Compl. ¶¶ 30-32). In addition, the registrant was aware of Square and the Square marks prior to selecting, acquiring, registering, and using the defendant domain names due to the significant publicity surrounding Square in connection with and prior to the commercial launch of the Square goods and services in July 2009 and due to written communications issued by Square in September 2011 in an attempt to settle this dispute amicably. (Compl. ¶¶ 33, 34, 36).

Square states that rather than responding to a cease and desist letter it sent to the registrant on September 7, 2011, the registrant filed trademark applications with the USPTO for the trademarks SQUAREUP on October 20, 2011 (U.S. Trademark Application No. 85/452,646) and SQUREUP on October 31, 2011 (U.S. Trademark Application No. 85/459,947). (Compl. ¶ 36). The SQUAREUP mark was identical to Square's SQUARE UP marks and the SQUREUP mark was nearly identical to Square's SQUARE mark and SQUARE & Design marks in appearance, sound, and commercial impression when used in connection with the registrant's services. (Compl. ¶ 37). Square asserts that the dominant portion of the respective parties'

marks were identical since the marks the registrant applied for wholly and prominently incorporated the widely recognized, famous, and distinctive SQUARE element common to all of the Square marks. *Id.* As the registrant's inclusion of the word "UP" made the applied-for SQUAREUP mark identical to Square's SQUARE UP marks and did little to distinguish the applied-for SQUAREUP mark from Square's widely recognized and famous SQUARE marks, the marks look alike and convey the same commercial impression. *Id.* Furthermore, the applied-for SQUREUP mark was a clear attempt at "typo-squatting" upon the Square marks insofar as it was a misspelling of Square's SQUARE UP mark with the omission of the letter "a" from the word "square," a common typo when attempting to reach <squareup.com>. *Id.* Square asserts that this was a clear attempt by the registrant to conjure the commercial impression of Square's SQUARE UP mark and the widely recognized, famous, and distinctive Square marks. *Id.*

The registrant's bad faith is further manifest in his attempt to register the SQUAREUP and SQUREUP marks for services related to and in the same International Class as Square's goods and services. (Compl. ¶ 38). The registrant's business model focused on advertising and marketing on the Internet and other forms of new media in Class 35 where Square's Class 35 services, namely financial and credit card processing services, are heavily advertised on the Internet and other forms of new media. *Id.* As such, the registrant and Square were likely to have an overlapping targeted consumer base. *Id.* In addition, rather than respond to Square's cease and desist letter, the registrant of the 54 defendant domain names transferred three of the defendant domain names registered at that time, <squareup.co>, <squraeup.com>, and <suqareup.com>, to Protected Domain Services in order to shield his identity. (Compl. ¶ 39). The registrant registered all subsequent domains through the Protected Domain Services privacy shield and/or the <WhoisGuardService.com> privacy shield to conceal his true identity. *Id.*

Square has now prevailed in an Opposition proceeding against the registrant's trademark applications. Square filed Opposition No. 91,205,401 ("the '401 Opposition") against the registrant's applications for the SQUAREUP and SQUREUP marks on June 1, 2012. (Compl. ¶ 40). A Notice of Default issued on August 1, 2012 due to the registrant's failure to respond to the '401 Opposition in a timely manner. (Compl. ¶ 41). On September 17, 2012, the Trademark Trial and Appeal Board ("TTAB") sustained Square's Opposition based on the registrant's failure to respond to the Opposition and on that same date, the applied-for SQUAREUP and SQUREUP marks were abandoned. (Compl. ¶ 42; *see also* Docket no. 1-15, Ex. N).

Square has also prevailed in two Uniform Dispute Resolution Policy ("UDRP") actions involving the registrant's infringing domain names. On March 27, 2012, Square filed a UDRP complaint against the registrant, Protected Domain Services, and <WhoisGuardService.com> regarding the registrant's registration and use of 80 infringing domain names. (Compl. ¶ 43). A Panel of the National Arbitration Forum granted Square's requested relief in Claim No. FA1203001436661, the UDRP action pending against the registrant, on May 11, 2012, finding that Square had established its rights in the SQUARE mark, continuously used and acquired secondary meaning in the SQUAREUP mark, and established rights in the <squareup.com> domain due to its use as a domain name. (Compl. ¶ 44; *see also* Docket no. 1-16, Ex. O). The Panel also found that (1) the registrant's disputed domain names were confusingly similar to Square's SQUARE mark, SQUAREUP mark, and <squareup.com> domain; (2) the registrant was not commonly known by the disputed domain names, was not making a *bona fide* offering of goods or services or a legitimate noncommercial or fair use of the disputed domain names, and was profiting from Square's famous brand; and (3) the registrant registered and used the disputed domain names in bad faith and engaged in typo-squatting. *Id.* On May 15, 2012, a

Panel of the National Arbitration Forum also granted Square's requested relief in Claim No. FA1203001436637, the UDRP action against the registrant and <WhoisGuardService.com>. (Compl. ¶ 45; *see also* Docket no. 1-17, Ex. P). The 54 defendant domain names are the same 54 domain names that were the subject of this UDRP action in which the Panel found that the disputed domain names were confusingly similar to Square's trademarks and that the registrant had a "mala fide intent" in registering and using the disputed domain names. *Id.* Based on these findings, the UDRP Panel ordered the transfer of the disputed domain names to Square. *Id.*

Despite Square's victory in the '401 Opposition at the TTAB and in the two UDRP proceedings, the registrant filed a complaint in China on May 23, 2012 with the Nanjing Intermediate People's Court ("Chinese Civil Complaint") to enjoin enforcement of the UDRP Panel's decision with respect to Claim No. FA 1203001436637. (Compl. ¶ 46). Square received an improperly served copy of the Chinese Civil Complaint on April 26, 2013. *Id.* The Chinese Civil Complaint stated that a hearing was scheduled in the Nanjing Court for April 25, 2013, the day before the registrant's purported service on Square. *Id.*

Square also asserts that the registrant has established a pattern and practice of infringing famous trademarks insofar as within the last year, the same registrant also filed an application for PINTERESTS (U.S. Trademark Application No. 85/558,578), which covers almost exactly the same services as filed in the Applications at issue in the '401 Opposition and is nearly identical to the famous PINTEREST brand. (Compl. ¶ 47). In addition, Square contends that the same registrant filed an application for FBCLOUD (U.S. Trademark Application No. 85/390,119), which evokes the famous FACEBOOK mark and the generic term CLOUD. *Id.*

Square contends that the registrant's selection, acquisition, registration, and use of the 54 defendant domain names is likely to cause confusion, mistake, or deception as to the affiliation,

13

connection, or association of the registrant with Square, or as to the origin, sponsorship, or approval of the 54 defendant domain names by Square, thereby causing loss, damage, and injury to Square. (Compl. ¶ 48). In large part because the apparent motivation for the registrant's use of the 54 defendant domain names is to trade and profit on this confusion, Square asserts that the extent of potential confusion among consumers between the 54 defendant domain names and the Square marks is substantial. *Id.* Consumers that are familiar with the Square marks are likely to believe mistakenly that the 54 defendant domain names are sponsored by, authorized by, associated with, or otherwise approved by Square because the 54 defendant domain names are confusingly similar to the Square marks. (Compl. ¶ 49). For this reason, actual and potential customers are likely to errantly arrive at the registrant's websites due to typos when their intent was to enter Square's domain name into their browsers and as a result of this blatant typo-squatting, the inferior quality, deficiencies, or other faults in the websites appearing at the 54 defendant domain names are likely to reflect negatively upon, tarnish, and seriously injure the reputation that Square has established for its goods and services and result in lost revenues to Square and damage to Square's reputation. *Id.*

Further, because the registrant's use of the 54 defendant domain names is likely to falsely suggest a relationship with Square's goods and services, there is likely to be a significant increase in the level of the registrant's web traffic due to consumers' mistaken belief that Square is the source or sponsor of the registrant's domain names. (Compl. ¶ 50). Square states that the registrant's use of the 54 defendant domain names is likely to result in the registrant trading off and benefitting from the goodwill associated with Square. *Id.* Even in the unlikely event a consumer was not confused into believing that the 54 defendant domain names are related to Square, Square claims that the registrant's use of the 54 defendant domain names will

14

nonetheless diminish the distinctive quality of the famous Square marks, causing dilution of Square's famous marks and a weakened ability of the Square marks to identify Square's goods and services. (Compl. ¶ 51).

### Proposed Findings and Recommendations

Rule 55 of the Federal Rules of Civil Procedure provides for the entry of a default judgment when "a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend." Based on the failure of anyone to file a responsive pleading or claim to any of the 54 defendant domain names in a timely manner, the Clerk of Court has entered a default as to each of the 54 defendant domain names. (Docket no. 13).

A defendant in default admits the factual allegations in the complaint. *See* Fed. R. Civ. P. 8(b)(6) ("An allegation – other than one relating to the amount of damages – is admitted if a responsive pleading is required and the allegation is not denied."); *see also GlobalSantaFe Corp. v. Globalsantafe.com*, 250 F. Supp. 2d 610, 612 n.3 (E.D. Va. 2003) ("Upon default, facts alleged in the complaint are deemed admitted and the appropriate inquiry is whether the facts as alleged state a claim."). Rule 55(b)(2) of the Federal Rules of Civil Procedure provides that a court may conduct a hearing to determine the amount of damages, establish the truth of any allegation by evidence, or investigate any other matter.

### Joinder Under Federal Rule of Civil Procedure 20

As an initial matter, this proposed findings of fact and recommendations will address whether the 54 defendant domain names were joined properly as defendants in this action. Federal Rule of Civil Procedure 20(a)(2) directs that multiple defendants may be joined in one action if: "(A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or

occurrences; and (B) any question of law or fact common to all defendants will arise in the action." Fed. R. Civ. P. 20(a)(2)(A)-(B). Thus, there are two tests that must be satisfied for a finding of proper joinder under Rule 20: first, a right to relief must be asserted against each defendant that relates to or arises out of the same transaction, occurrence, or series of transactions or occurrences; and second, a question of law or fact common to all defendants must arise in the suit. The Supreme Court has generally encouraged joinder of claims, parties, and remedies in order to "entertain[] the broadest possible scope of action consistent with fairness to the parties." *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 724 (1966).

To satisfy the transaction or occurrence test under Rule 20(a)(2), there must be a logical relationship between the events giving rise to the cause of action against each defendant. Though this case is brought as an *in rem* action against 54 individual defendant domain names, Square has established that all 54 of the defendant domain names have the same registrant, Jin Qian. (Compl. ¶ 4). Given the allegations in the complaint and the argument presented by Square that each of the 54 defendant domain names at issue in this case was registered and used by a single registrant with the bad faith intent to profit from the Square marks, it appears that sufficient support has been presented to establish that this ACPA claim against 54 defendant domain names satisfies Rule 20's "transaction or occurrence" test as articulated by the Supreme Court and the courts of this Circuit. As to the common question of fact or law, in this case, there is no question that the claims asserted by Square against the 54 defendant domain names do involve common questions of law: the validity of the Square marks and the illegal act of cyber-squatting and/or typo-squatting allegedly committed by each of the 54 defendant domain names.

For these reasons, the undersigned recommends a finding that joinder is appropriate as to the 54 defendant domain names.

## Jurisdiction and Venue

A court must have both subject matter and personal or *in rem* jurisdiction over a defaulting defendant before it can render a default judgment. Square's claims arise under the ACPA, 15 U.S.C. § 1125(d), and this court has jurisdiction over the subject matter of this action under 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338(a).

The court has *in rem* jurisdiction over the 54 defendant domain names under 15 U.S.C. § 1125(d)(2). The first required element for *in rem* jurisdiction over a domain name exists where the domain name violates any right of the owner of a mark registered with the Patent and Trademark Office. *See* 15 U.S.C. § 1125(d)(2)(A)(i). Square owns federally-registered trademarks for the SQUARE marks and has pending federal applications for the SQUARE UP marks and it claims that its rights in these marks are being violated by the registration and use of the 54 defendant domain names.

The ACPA also conditions *in rem* jurisdiction upon a finding that the trademark owner (a) is unable to obtain personal jurisdiction over a person who would otherwise be a defendant in a civil action under the ACPA or (b) through due diligence cannot find the person who would have been a defendant in such an action, having sent that person postal and electronic notice of both the alleged violation and the owner's intent to sue. *See* 15 U.S.C. § 1125(d)(2)(A)(ii). Given that the current registrant of the 54 defendant domain names resides in China and does not appear to have any ongoing business activities in the United States, Square has established that it is unable to obtain personal jurisdiction over the registrant of the 54 defendant domain names who would otherwise have been the defendant in this suit.

Venue is proper in this district under 15 U.S.C. § 1125(d)(2)(C)(i), which places venue for an *in rem* ACPA action in the judicial district in which the domain name's registrar, registry,

or other domain name authority that registered or assigned the domain name is located. VeriSign is the exclusive registry controlling domain names with a top-level domain of <.com>, including each of the 54 defendant domain names, and VeriSign has offices within this district and division. (Compl. ¶ 7).

For these reasons, the undersigned magistrate judge recommends a finding that this court has subject matter jurisdiction over this action, that the court has *in rem* jurisdiction over each of the 54 defendant domain names, and that venue is proper in this court.

## Service

In support of plaintiff's motion for default judgment, Anne M. Sterba executed a declaration stating that on May 2, 2013, counsel for Square sent notice of violation of the ACPA and Square's intent to file an *in rem* action to the registrant of the 54 defendant domain names, Jin Qian, at the e-mail and postal addresses provided by the registrant to the registrar and also provided actual postal and e-mail notice dated May 2, 2013 to NIT, the registrar of the 54 defendant domain names. (Sterba Decl. II ¶ 2; *see also* Docket no. 6-1, Exs. A and B). On May 6, 2013, Square filed a motion for an order to publish notice of action. (Docket no. 5). Pursuant to the court's May 9, 2013 order to publish notice of action pursuant to § 1125(d)(2)(A)(ii)(II)(bb) (Docket no. 7), Square published notice of this action in *The Washington Times* on May 21, 2013 (Docket no. 10). As set forth in the notice of action, any person claiming an interest in any of the 54 defendant domain names was required to file an answer or other response to the complaint within 21 days from the date of publication of the order in *The Washington Times*. *Id.* The 21-day time period for filing an answer or claim expired on June 11, 2013. *Id.*

The ACPA provides that service of process in an *in rem* action may be accomplished by sending a notice of the alleged violation and intent to proceed under the ACPA to the registrant of the domain name at the postal and e-mail address provided by the registrant to the registrar and by publishing notice of the action as the court may direct promptly after filing the action. 15 U.S.C. § 1125(d)(2)(B). Square has complied with these provisions.

For these reasons, the undersigned recommends a finding that service of process has been accomplished in this action.

<u>**Grounds for Entry of Default**</u>

Under Fed. R. Civ. P. 12(a) and as stated in the order of publication, anyone asserting a claim to any of the 54 defendant domain names was required to file an answer or response with the Clerk of Court by June 11, 2013. No responsive pleading or claim was filed by either the named registrant or anyone else claiming ownership of the 54 defendant domain names and on June 18, 2013, Square filed a request for entry of default, along with a declaration in support thereof from Anne M. Sterba. (Docket nos. 12, 12-1). The Clerk entered default as to the 54 defendant domain names on June 21, 2013. (Docket no. 13). Square's motion for default judgment and memorandum and declaration in support of the motion were filed on June 28, 2013 and the notice of hearing for July 12, 2013 was filed on July 3, 2013. (Docket nos. 14, 15, 17). Copies of these pleadings were sent to the registrant by mail and e-mail on June 28, 2013 and July 3, 2013. *Id.*

The undersigned magistrate judge recommends a finding that notice of this *in rem* action was provided properly, that no one filed a responsive pleading or claim to any of the 54 defendant domain names in a timely manner, and that the Clerk of Court properly entered a default as to each of the 54 defendant domain names.

## Liability and Relief Sought

According to Fed. R. Civ. P. 54(c), a default judgment "must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Because no responsive pleading was filed, the factual allegations in the complaint are deemed admitted. *See* Fed. R. Civ. P. 8(b)(6). The relief sought in the motion for default judgment, as shown in the attached proposed order, is for the court to (1) declare that Square is the sole legal and equitable owner of the 54 defendant domain names; (2) order VeriSign to transfer the 54 defendant domain names from the current registrar NIT to Melbourne IT; (3) order Melbourne IT to transfer the registrations of the 54 defendant domain names to Square; and (4) assess plaintiff's taxable costs of court, as calculated by the Clerk of the Court, against the 54 defendant domain names. (Docket no. 14-1). The notice published pursuant to the ACPA provided that one of the remedies available under the ACPA was the transfer of the domain name to Square in this action. (Docket nos. 7, 10).

To state a claim under the ACPA, Square must prove that each of the 54 defendant domain names and/or the registrant registered, trafficked in, or used the domain name with a bad faith intent to profit and that the domain name is either identical or confusingly similar to a distinctive mark owned by Square, or, upon a finding that a mark owned by Square is famous, that the domain name is identical or confusingly similar to, or dilutive of, Square's famous mark. *See* 15 U.S.C. § 1125(d)(1)(A); *see also People for the Ethical Treatment of Animals v. Doughney*, 263 F.3d 359, 367 (4th Cir. 2001). The registrations for the Square marks on the Principal Register are *prima facie* evidence that the marks are at least descriptive and have acquired distinctiveness. *America Online, Inc. v. AT&T Corp.*, 243 F.3d 812, 816 (4th Cir. 2001). Further, secondary meaning is typically found where there are extensive advertising expenditures, sales successes, attempts to plagiarize a mark, and where a mark has been used

exclusively for an extended period of time. *See, e.g., Perini Corp. v. Perini Constr. Inc.*, 915 F.2d 121, 125 (4th Cir. 1990).

Here, Square has obtained federal registrations for the SQUARE marks and has pending applications to obtain registrations for the SQUARE UP marks. (Compl. ¶ 18). Square states that it has used the Square marks in interstate commerce in connection with its goods and services, including hardware and software for processing financial transactions through mobile devices and electronic payment services, since at least as early as July 2009. (Compl. ¶ 20). Based on the continuous use of the Square marks for over three years in connection with Square's highly publicized and successful business, Square asserts that the Square marks have attained widespread public recognition and have become identified exclusively with Square's goods and services in the minds of consumers. (Compl. ¶ 22). Square also asserts that the Square goods and services have been advertised, promoted, marketed, offered, and/or rendered in connection with the Square marks continuously since at least as early as July 2009 and that Square has spent considerable time, money, and effort promoting the Square marks on the Internet and in other media. (Compl. ¶ 14). Square has developed consumer recognition and goodwill in the Square marks throughout the nation by means of printed, web-based, mass media, and television advertisements, publications, and commercials, including images, videos, and promotions featured on Square's website at <squareup.com>. *Id.* Since its launch in 2009, Square has become an industry leader in the area of mobile payment solutions for Apple and Android cell phone and tablet devices and has received considerable publicity from third-party sources that serves to establish the fame, customer recognition, and goodwill that has been established in the Square marks nationwide. (Compl. ¶¶ 11, 12). For these reasons, the undersigned recommends a finding that the Square marks are at least distinctive.

The next consideration is whether each of the 54 defendant domain names is identical or confusingly similar to the Square marks. Based on the uncontested allegations in the complaint, the undersigned magistrate judge recommends a finding that each of the 54 defendant domain names is confusingly similar to the Square marks. Further, the registration and use of the 54 defendant domain names is likely to cause confusion among the public, including customers of Square, because the "dominant or salient portions" of the 54 defendant domain names and the Square marks are identical. *Lone Star Steakhouse & Saloon, Inc. v. Alpha of Va., Inc.*, 43 F.3d 922, 936 (4th Cir. 1995). Accordingly, "a finding of likelihood of confusion is appropriate despite the fact that collateral portions of the mark may differ." *Atlas Copco AB v. Atlascopcoiran.com*, 533 F. Supp. 2d 610, 614 (E.D. Va. 2008) (finding that the addition of generic geographic terms to plaintiff's registered mark did not distinguish the defendant domain names from the registered marks) ("An internet user might reasonably assume that the geographic term 'CASPIAN' and 'IRAN' were added to the ATLAS COPCO trademark by the Plaintiffs to identify its geographic location.").

In this case, each of the 54 defendant domain names includes the distinctive SQUARE mark, which is common to all of the Square marks, or a misspelling of the SQUARE mark. The misspelling of the Square mark constitutes a clear attempt at typo-squatting on the Square marks insofar as omitting or inserting a letter or letters from the word "square," altering the order of the letters in the word "square," or substituting a different letter in the word "square" takes advantage of common typos made by consumers when attempting to reach <squareup.com> while conjuring the commercial impression of Square's marks. (Compl. ¶ 37). The registrant's inclusion of the secondary word "UP" in some of the defendant domain names renders those domain names identical or nearly identical to Square's SQUARE UP marks and does little to

22

distinguish these domain names from Square's widely recognized and famous SQUARE marks. Moreover, these misspellings are either identical to Square's SQUARE UP marks or nearly identical to Square's SQUARE marks in appearance and sound and thus look alike and convey the same commercial impression. Based on a simple comparison of the Square marks and the 54 defendant domain names and the fact that similar services have been offered under the Square marks and on the websites available at the defendant domain names, it seems that any use of the defendant domain names by someone other than Square could cause confusion. Thus, Square has shown that the 54 defendant domain names are confusingly similar to the Square marks.

Having recommended a finding that the Square marks are distinctive and that the 54 defendant domain names are confusingly similar to the Square marks, the remaining question is whether the 54 defendant domain names were registered or used with bad faith intent to profit. For at least the following reasons, the undersigned recommends a finding that the 54 defendant domain names were registered and used with the bad faith intent to profit from the Square marks:

1. The Square marks, which have been incorporated into the 54 domain names identically or nearly identically as common misspellings, are distinctive within the meaning of 15 U.S.C. § 1125(d)(1)(B)(i)(IX);

2. The registrant of the 54 defendant domain names does not have any valid trademark or intellectual property rights in the Square marks or the 54 defendant domain names within the meaning of 15 U.S.C. § 1125(d)(1)(B)(i)(I);

3. It appears that the 54 defendant domain names do not consist of the registrant's legal name, nor do they in any way identify the registrant within the meaning of 15 U.S.C. § 1125(d)(1)(B)(i)(II);

4.      The registrant of the 54 defendant domain names has not used the defendant domain names in connection with the *bona fide* offering of any goods or services within the meaning of 15 U.S.C. § 1125(d)(1)(B)(i)(III) since the registrant does not have any right to use the Square marks and the defendant domain names are not being used to sell Square's goods and services, the only *bona fide* use of the Square marks;

5.      The registrant has not used the 54 defendant domain names for *bona fide* noncommercial purposes or within the fair use provisions of 15 U.S.C. § 1125(d)(1)(B)(i)(IV);

6.      The registrant's intent in obtaining and maintaining the registrations for the 54 defendant domain names and using these domain names, despite adverse findings in two UDRP actions in May 2012 and by the TTAB in an Opposition proceeding against the registrant's trademark applications in September 2012, was to divert Square's customers and profit from the goodwill of the Square marks, within the meaning of 15 U.S.C. § 1125(d)(1)(B)(i)(V); and

7.      The registrant has registered or acquired more than one domain name known to be confusingly similar to the marks of others within the meaning of 15 U.S.C. § 1125(d)(1)(B)(i)(VIII).

The ACPA provides that, upon a finding of a violation, the court has discretion to cancel the domain name registration or order it transferred to the trademark owner. 15 U.S.C. § 1125(d)(1); *Harrods Ltd. v. Sixty Internet Domain Names,* 302 F.3d 214, 232 (4th Cir. 2002) ("Transfer or cancellation of the defendant domain name[] is the only remedy available under § 1125(d)(2)'s *in rem* provision").

For these reasons, the undersigned recommends a finding that the registrant's actions have violated the ACPA. The undersigned further recommends that an order be entered requiring (1) the registry VeriSign to change the registrar of record for the 54 defendant domain

names from the current registrar NIT to Melbourne IT; and (2) Melbourne IT to take the necessary steps to register the 54 defendant domain names in the name of plaintiff.[6]

## Conclusion

For these reasons, the undersigned magistrate judge recommends that a default judgment be entered in favor of Square, Inc. and against the 54 defendant domain names[7]. The undersigned further recommends that the court enter an Order requiring VeriSign, Inc. to change the registrar of record for each of the 54 defendant domain names from the current registrar Nanjing Imperiosus Technology Co. Ltd. to Melbourne IT Digital Brand Services, plaintiff's designated registrar, and requiring Melbourne IT Digital Brand Services to take the steps necessary to register each of the 54 defendant domain names in the name of Square, Inc.

---

[6] This proposed relief differs slightly from the relief requested in the motion for default judgment and it was discussed with and agreed to by plaintiff's counsel during the hearing on July 12, 2013. The proposed order attached to plaintiff's motion for default judgment also requested that plaintiff's taxable costs of court, as calculated by the Clerk of the Court, be assessed "against defendant." (Docket no. 14-1). If these recommendations are adopted by the District Judge, plaintiff will be the prevailing party in this action and may file a bill of costs pursuant to Fed. R. Civ. P. 54(d)(1).

[7] These domain names include: <suareup.com>, <squreup.com>, <wwwsquareup.com>, <qsuareup.com>, <squarepu.com>, <squaruep.com>, <sqiareup.com>, <quareup.com>, <squaerup.com>, <swuareup.com>, <squateup.com>, <squareip.com>, <squarreup.com>, <squuareup.com>, <sqyareup.com>, <squaeeup.com>, <sqquareup.com>, <squareuup.com>, <sssquareup.com>, <squsreup.com>, <squareyp.com>, <aquareup.com>, <squareupp.com>, <squaareup.com>, <squarwup.com>, <squarrup.com>, <squareeup.com>, <xquareup.com>, <zquareup.com>, <equareup.com>, <sqjareup.com>, <sqhareup.com>, <squarejp.com>, <squarehp.com>, <squareul.com>, <sqjuareup.com>, <squjareup.com>, <squhareup.com>, <sqhuareup.com>, <squzareup.com>, <squazreup.com>, <squaqreup.com>, <squqareup.com>, <squafreup.com>, <squarfeup.com>, <squardeup.com>, <squarseup.com>, <squareujp.com>, <squareuhp.com>, <squareulp.com>, <squareupl.com>, <sxquareup.com>, <xsquareup.com>, and <squarejup.com>.

# NOTICE TO PARTIES

Failure to file written objections to these proposed findings of fact and recommendations within 14 days after being served with a copy of the proposed findings of fact and recommendations may result in the waiver of any right to a *de novo* review of the proposed findings and recommendations and such failure shall bar you from attacking on appeal any finding or conclusion accepted and adopted by the District Judge except upon grounds of plain error. A copy of these proposed findings of fact and recommendations shall be sent to the registrant of the 54 defendant domain names at Qian Jin, Guojiashan 29-82-4, Nanjing, Jiangsu 210037 CHINA by the court. Counsel for the plaintiff is directed to send a copy of these proposed findings of fact and conclusions of law to the various e-mail addresses provided by the registrant to the registrar and to file a certificate of service indicating the date those e-mails were sent.[8]

Entered this 15th day of July, 2013.  _____/s/_____

John F. Anderson
United States Magistrate Judge

John F. Anderson
United States Magistrate Judge

Alexandria, Virginia

---

[8] The e-mail addresses include: <qj118@163.com>, <lixiangyun515@yeah.net>, <qLL118@163.com>, <zbaoji@163.com>, <qsuareup.com@domainersidguard.com>, <squarepu.com@domainersidguard.com>, <euro1999@gmail.com>, <sqiareup.com@domainersidshield.com>, <meimei881021@126.com>, <cnlang.lang@163.com>, <swuareup.com@domainersidshield.com>, <nj@live.cn>, <squareip.com@domaiersidshield.com>, <ho@live.com>, <squuareup.com@noiddomains.com>, <188domain@gmail.com>, <dongdixiong@126.com>, <sqquareup.com@whoisdummy.com>, <squareuup.com@whoisdummy.com>, <goway188@yahoo.com>, <love858@126.com>, <squareyp.com@whoisdummy.com>, <wangde7788@163.com>, <fastclub@yahoo.cn>, <bjlove999@163.com>, <hao_3559@qq.com>, <chenloveu@foxmail.com>, <quopin123@yahoo.com>, <liut870618@yeah.net>, <zquareup@whoisdummy.com>, <fenxianglvyou@qq.com>, <bencool8@126.com>, <sqhareup.com@domainersid.com>, <bigfoodking@126.com>, <happyguide@foxmail.com>, <jinjia888@yahoo.com>, <yutian188@yeah.net>, <yesgou999@163.com>, <musicbillboard@qq.com>, <hahaya888@163.com>, <squzareup.com@dnwhoisguard.com>, <squarzreup.com@whoispimp.com>, <feibb968@yahoo.com>, <squqareup.com@whoispimp.com>, <domain551@163.com>, <squarfeup.com@whoispimp.com>, <youtai888@yahoo.com>, <zb1901013@163.com>, <pennychenlive@gmail.com>, <namike163@yahoo.com>, <ljj86888@126.com>, <loveu888@163.com>, <jinjing188@yahoo.com>, <bright_windows@hotmail.com>, and <youni188@yahoo.com>.